## A03A2042. ARMOUR v. THE STATE.
(594 SE2d 765)

JOHNSON, Presiding Judge.

Billy Armour was found guilty of burglary, arson, and making terroristic threats. He appeals from his convictions, contending the trial court erred in excluding a police officer's written report, denying his motion for a directed verdict of acquittal on the terroristic threat charge, giving an improper instruction to the jury on the terroristic threat charge, and excluding questions regarding the circumstances surrounding a police officer's resignation from the police department. None of the charges has merit, so we affirm the convictions.

1. Armour maintains that he was entitled to a directed verdict of acquittal on the charge that he made terroristic threats because the alleged victim did not actually hear him threaten to burn her house down and she was not told about the threat until after the house was burned. Armour was not entitled to a directed verdict of acquittal on the charge.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction.[1] We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[2] We do not weigh the evidence

[1] *Worthington v. State*, 257 Ga. App. 10 (570 SE2d 85) (2002).
[2] Id.

or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[3]

The evidence shows that Armour and his ex-girlfriend, Deborah Wood, lived together in Wood's mobile home for a short time. The two split up and Armour moved out. On March 9, 1999, Armour was charged with simple battery for striking Wood in the face.

On about April 23, 1999, when Armour was released from jail, he went to Wood's house. He had been drinking and was begging for money. Wood kept asking him to leave, but he refused. Determined to get away from Armour, Wood got into her car to leave. Armour jumped in the car with her. When Wood stopped at a gas station a few miles away, Armour got out to get a light for a cigarette, and Wood drove away. Armour left several threatening messages on Wood's answering machine.

That evening, Wood went to an auction with two friends. Afterward, the three returned to Wood's home to find the lock and latch on the door broken, some of Wood's clothing missing, and the messages on her answering machine erased. A short time later, Wood's male friend was standing in the doorway repairing the door, and Wood was in the living room telephoning police. Armour and his sister, Joyce Lopez, arrived and began fussing at Wood for having left Armour at the gas station. Armour, who was on the porch, yelled that he would beat Wood up, adding, "I'll burn your house down with you in it." Wood's male friend was standing in the doorway, and Armour "was yelling right in my ear." The friend's wife and Wood were standing in the living room of Wood's small house; the area they occupied was described as "close quarters." Wood testified that she heard Armour cursing at her, calling her names, and threatening to beat her up, but that she did not specifically hear him threaten to burn down the house. At the time Armour was yelling at her, Wood was talking on the phone to police and also telling her friend to give Armour and Lopez some money in hopes that they might leave. Lopez warned Armour that Wood was on the phone with police and that they needed to leave Wood's home, which they did.

Wood decided to leave town for a few days. As she was leaving, her male friend remarked that he hoped Armour would not carry out his threat. Wood thought the friend was talking about the threat to beat her up, as she had not heard the arson threat. Wood was afraid to return home alone, and on April 27, while she was gone, her house burned down. Investigators determined that fires had been inten-

---

[3] Id. at 10-11.

tionally set in three separate areas of Wood's home. Gasoline had been used as an accelerant. Witnesses across the street were standing outside talking at the time the fires were set. They saw Armour and co-defendant Brantley Maney walk out from behind Wood's house and could see that Wood's house was on fire. They saw Armour and Maney go into the trailer next door, which belonged to Lopez.

Maney testified that Armour was angry at Wood for leaving him at the gas station, that it was Armour's idea to set the house on fire, and that Maney cut himself breaking in the back door of the house. He, Armour, and Lopez set the house on fire using gasoline and took a VCR, a jewelry box, and food to Lopez's house next door.

When investigators went to Armour's home, they found that Armour's shoes and Lopez's shoes had gasoline on them. They found blood on the door of Wood's house, and on the VCR recovered at Lopez's house.

A directed verdict of acquittal was not required. Witnesses testified that they heard Armour threaten to burn Wood's house down and that he hoped she was in it at the time. Wood was present when the threat was made. And it is clear from comments Wood's friends made the night Armour shouted the threat and after the fire that they both thought Wood heard the threat. Wood said she "didn't exactly hear clearly everything that [Armour] said because I couldn't hold three conversations at one time." When police arrived, Wood was "still rattled and shaken" by the incident.

A person commits the crime of making a terroristic threat when he threatens to commit any crime of violence or to burn or damage property with the purpose of terrorizing another.[4] The crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize.[5] That the message was not directly communicated to the victim would not alone preclude a conviction *where the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim.*[6] A jury could find from the evidence that Armour intended or expected the threat he yelled from just outside the open door of her small home to be conveyed to Wood.[7] Indeed, others situated near Wood heard the threat and Wood did hear some of what Armour shouted. That she did not hear precisely what he was yelling does not require a differ-

---

[4] OCGA § 16-11-37 (a). We note that the evidence would have supported a terroristic threat charge based on his threat to beat up Wood, but the indictment charged Armour only with threatening to burn Wood's residence.

[5] *Boone v. State*, 155 Ga. App. 937, 939 (2) (274 SE2d 49) (1980).

[6] *Wiggins v. State*, 171 Ga. App. 358, 359 (1) (319 SE2d 528) (1984).

[7] See *Boone*, supra.

ent outcome.[8] The court did not err in denying Armour's motion for a directed verdict of acquittal on the terroristic threats charge.

2. In a related enumeration of error, Armour argues that the trial court erred in failing to instruct the jury that the state was obligated to show that the victim heard the threat. However, as discussed in Division 1, the state was not required to show that the victim actually heard the threat he shouted in her presence. Inasmuch as the charge as given was a correct statement of the law, this enumeration has no merit.

3. Armour contends the trial court erred in not allowing him to introduce into evidence the investigating officer's report summarizing interviews of the witnesses who testified that they saw Armour leaving Wood's house shortly after it was set on fire. Armour claims he should have been permitted to use the report to impeach the witnesses' trial testimony. The trial court did not abuse its discretion in disallowing the evidence.

The officer's report did not contain prior inconsistent statements inasmuch as the short summaries written by the officer were not inconsistent with the witnesses' trial testimony. The officer wrote in his report that one of the witnesses reported seeing two men walk out of Lopez's house and behind Wood's house, but that "he paid no more attention to them." At trial the witness gave more detail, testifying that one of the men had reddish-blonde hair, that there was a woman in the trailer next door to the burned home, and that he later saw the men in the crowd. Armour says the reported statements were inconsistent with the witness' trial testimony.

Likewise, Armour points out that the officer wrote in his report that the other witness saw two men walk out from behind one house and into the home next door, but the officer did not include a description of the men. At trial, the witness provided a detailed description of the men, identifying one of them as Armour, and noting that one of the men carried a gas can, and a woman was in the trailer next door.

In impeaching a witness with a prior inconsistent statement, the cross-examiner must meet certain requirements.[9] Among them, the prior statement must contradict or be inconsistent with the witness' in-court testimony.[10] The witnesses' testimony did not contradict the officer's summary of their earlier statements. Instead, the testimony was simply more detailed than the summary compiled by the officer.

---

[8] See *Shepherd v. State*, 230 Ga. App. 426 (496 SE2d 530) (1998) (terroristic threat conviction affirmed where threat was directed against an absent third party); *Jackson v. State*, 270 Ga. 494, 496 (1) (512 SE2d 241) (1999) (victim present on the scene when threat was made); *Worthington*, supra (victim need not testify that she heard threat where witnesses heard defendant make the threat).

[9] See *Duckworth v. State*, 268 Ga. 566, 567-568 (1) (492 SE2d 201) (1997).

[10] Id.

Because the statements were not inconsistent, the report was not admissible as containing prior inconsistent statements.[11]

In addition, the examining attorney was required to lay the proper foundation with the witness.[12] The purpose of the foundation requirement is to give the witness an opportunity to admit, explain, or deny the prior contradictory statement.[13] Before contradictory statements may be proved against him, the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible.[14] Armour failed to lay this foundation.[15] Armour also failed to show that the report, which he claims was necessary based on the officer's illness and unavailability for trial, was surrounded by guarantees of trustworthiness;[16] narrative portions of a police report are not admissible under the business records exception to the hearsay rule.[17] Finally, given the overwhelming evidence of Armour's guilt in connection with the arson charge, it is unlikely that any error in excluding the report was harmful.[18] The trial court did not abuse its discretion in disallowing the report.[19]

4. Armour complains that the trial court should have allowed him to impeach the crime scene investigator by inquiring into the fact that the officer pled nolo contendere to a misdemeanor criminal trespass charge two years after Wood's house was burned. Armour failed to lay the proper foundation for its admission, as no certified copy of a conviction was tendered.[20] And, criminal trespass is a misdemeanor and not a crime of moral turpitude; it cannot be used for impeachment purposes.[21] Finally, a plea of nolo contendere cannot be used against a defendant in any other court as an admission of guilt or for any purpose.[22] There was no error.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED FEBRUARY 12, 2004.

*Cummings, Kelley & Bishop, Thomas S. Bishop*, for appellant. Billy D. Armour, *pro se*.

---

[11] See id.
[12] Id.
[13] Id.
[14] Id.
[15] See OCGA § 24-9-83; *Horne v. State*, 204 Ga. App. 81, 82 (1) (418 SE2d 441) (1992).
[16] See *Chapel v. State*, 270 Ga. 151, 154-155 (4) (510 SE2d 802) (1998).
[17] See *Brown v. State*, 274 Ga. 31, 33 (1) (549 SE2d 107) (2001).
[18] See generally *Morrow v. State*, 229 Ga. App. 242, 245 (4) (493 SE2d 616) (1997).
[19] See generally *Duckworth*, supra at 567 (1).
[20] See *Henderson v. State*, 247 Ga. App. 31-32 (1) (543 SE2d 95) (2000).
[21] See *Maxwell v. State*, 250 Ga. App. 628, 630 (3) (552 SE2d 870) (2001).
[22] See OCGA § 17-7-95 (c).

*Jason J. Deal, District Attorney, Jennifer C. Bagwell, Assistant District Attorney*, for appellee.