## A05A2342. McGRAW v. THE STATE.
(624 SE2d 232)

JOHNSON, Presiding Judge.

A jury found Roy Butch McGraw guilty of attempted arson and five counts of aggravated assault based on evidence that McGraw poured gasoline near two ignition sources (a light bulb and a water heater) in the crawlspace of his estranged girlfriend's house and then told the estranged girlfriend's adult children to light the water heater's pilot flame. McGraw appeals, alleging the evidence was insufficient to sustain the verdict, a fatal variance existed between the indictment and the state's proof at trial, the trial court erred in its charge to the jury, and his counsel provided ineffective assistance. We find no error and affirm McGraw's convictions.

1. McGraw first contends the trial court erred in failing to direct a verdict on all counts and in failing to grant his judgment notwithstanding the verdict because the evidence was insufficient to sustain the verdict. Specifically, he argues it was scientifically impossible for him to have poured the gasoline into the crawlspace ground on August 8, 2002 because the state's expert testified that the samples obtained by the investigator on August 9, 2002 showed that the gasoline had been in the ground a minimum of three days. He further argues that the evidence shows that his ex-girlfriend had noticed a strange smell in the crawlspace before August 8, 2002. We find that McGraw's arguments misconstrue the evidence.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction.[1] We view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[2] Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the fact-finder, not this Court.[3] As long as there is some evidence,

---

[1] See *Armour v. State*, 265 Ga. App. 569 (1) (594 SE2d 765) (2004).

[2] *Waller v. State*, 267 Ga. App. 608 (600 SE2d 706) (2004).

[3] Id.

even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[4]

Viewed in this light, the record shows that shortly after lunch on August 8, 2002, McGraw showed up at Melanie Griffis' house uninvited. Griffis was his ex-girlfriend. Griffis agreed to go out with him that evening because he was lingering around her house and causing a very stressful atmosphere. Before leaving, McGraw offered to go under the house and check a leak in the bathroom plumbing that he had previously repaired. Griffis' older daughter observed McGraw going back and forth from his truck to the side of the house, near the crawlspace door, carrying a bright red five-gallon gasoline can with a black nozzle. Griffis' other daughter also saw McGraw at the entrance of the house's crawlspace.

McGraw subsequently reentered the house and "repeated to [Griffis] several times that the water heater was off and it was in the 'on' position and ready to light and the children needed to light the water heater after we were gone." In fact, between lunch and 4:15 that afternoon, McGraw repeated this directive so many times that Griffis became very irritated and told McGraw the gas company could do it. McGraw insisted, however, that "it's ready to light, all they have to do is strike a match." McGraw also went directly to the adult children and told them they needed to light the water heater's pilot flame, but they both ignored him.

Because Griffis began smelling gasoline fumes soon after McGraw returned from the crawlspace, she directed her children not to light the pilot flame. The next morning Griffis still smelled a strong gasoline odor and contacted the gas company. The gas technician informed her that she should contact the police because there was no natural gas problem. An investigator with the Cobb County Fire and Emergency Services determined that there were three distinct pour patterns of ignitable fluid in the crawlspace and concluded that the patterns were "very, very recent" and were definitely an intentional act. The investigator noted that the water heater was equipped with a pilot flame and that the water heater knob was in the "off" position. He also noted that there was a light bulb with a pull chain at the crawlspace entrance, another potential ignition source for the poured gasoline. The investigator took samples of the dirt and debris from the area where the dirt was saturated with gasoline. He also collected a portion of the top of a cardboard box located close to the crawlspace light bulb that appeared to be saturated with an ignitable fluid.

---

[4] Id.

An expert in testing and identifying ignitable fluids analyzed the dirt and cardboard. He opined that these items contained weathered gasoline, an ignitable fluid. According to the expert, microbial degradation of the soil normally occurs after gasoline has been in the soil three to five days. Because there was no sign of microbial degradation, the expert testified that the gasoline in Griffis' crawlspace had been in the soil for no more than three to five days. The expert later explained during cross-examination that he could only guess as to "the minimum amount of time that [this] gasoline would have had to have been in the soil."

McGraw contends the expert testified that the gasoline had been in the ground a minimum of three days because, when asked on cross-examination to give his opinion — "not knowing all the factors" — the expert stated that the gasoline looked like it had been in the soil three to five days. However, a review of the expert's entire testimony shows that the expert testified repeatedly that the gasoline had been in the soil no more than three to five days based on the lack of microbial degradation in the soil and that he could only guess as to the minimum amount of time that the gasoline had been in the soil. Contrary to McGraw's assertion, the record does not show that it was "scientifically impossible" for him to have poured the gasoline in the crawlspace.

Moreover, even if the expert did opine that the gasoline had been in the soil for a minimum of three to five days, his opinion on this subject was not conclusive to the jury's verdict. While such testimony is intended to aid the jury, the jury is not bound by such opinion, and can disregard it.[5] Other evidence in the record shows that witnesses observed McGraw going under the crawlspace with a gasoline can and that McGraw subsequently insisted, repeatedly, that Griffis' adult children light the pilot flame.

As for Griffis' testimony regarding a strange smell prior to August 8, 2002, the record shows that Griffis was testifying about a separate incident and that she specifically testified that the previous odor was "nothing like this incident." Viewed in a light most favorable to the verdict, the evidence authorized a rational trier of fact to find the essential elements of attempted arson and aggravated assault beyond a reasonable doubt.[6] The trial court correctly denied McGraw's motions for a directed verdict and j.n.o.v.

---

[5] See *Hambrick v. Makuch*, 228 Ga. App. 1, 3 (2) (b) (491 SE2d 71) (1997); *Feldschneider v. State*, 127 Ga. App. 745, 747 (3) (195 SE2d 184) (1972).

[6] See *Lathan v. State*, 241 Ga. App. 750, 751 (1) (526 SE2d 350) (2000).

2. McGraw challenges his attempted arson conviction, alleging there exists a fatal variance between the state's allegation that he "told household members to go and turn on one of the ignition sources" and Griffis' testimony that McGraw "repeated to [her] several times that the water heater was off and it was in the 'on' position and ready to light and the children needed to light the water heater after we were gone."

Even assuming McGraw has presented a variance, this variance is not fatal because the state's attempted arson charge informed McGraw as to the charge against him so he could prepare his defense and protected McGraw against another prosecution for the same offense.[7] The charged act of telling household members to turn on one of the ignition sources and the proved act of telling household members to light the pilot flame would produce the same result — a fire — when done in the presence of poured gasoline.

3. McGraw contends the trial court "erroneously charged the jury on party to the crime when there was no evidence that McGraw and the members of his household shared a common criminal intent." According to McGraw, the trial court charged the jury that a person commits the offense of arson if he damages or "knowingly causes, aids, abets, encourages, counsels, or procures another to damage any dwelling house of another" when the record contains no evidence of aiding, abetting, encouraging, counseling or procuring.

Contrary to McGraw's assertions, the trial court did not charge on the law of party to a crime. The court merely charged the jury regarding the crime of arson. OCGA § 16-7-60 defines arson in the first degree:

(a) A person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage: (1) Any dwelling house of another without his or her consent . . . whether it is occupied, unoccupied, or vacant . . . or (5) Any building . . . under such circumstances that it is reasonably foreseeable that human life might be endangered.

The trial court charged this Code section:

Section 16-7-60, arson in the first degree: A person commits the offense of arson in the first degree when, by means of fire or explosive, he damages or knowingly causes, aids, abets,

---

[7] See *Wisham v. State*, 262 Ga. App. 380, 381-382 (585 SE2d 675) (2003).

encourages, counsels, or procures another to damage any dwelling house of another without his consent, whether it is occupied, unoccupied or vacant, or any building or other structure under such circumstances that it is reasonably foreseeable that human life might be in danger.

No party to a crime charge was given. Furthermore, the evidence shows that McGraw encouraged, albeit unsuccessfully, Griffis' children to light an ignition source that would have set the house ablaze. The trial court did not err in giving this instruction.

4. McGraw's fourth enumeration of error raises the party to a crime issue in the context of ineffective assistance of counsel, arguing that his trial attorney ineptly failed to take exception to the trial court's jury instructions. However, because the arson charge given was a correct statement of the law, McGraw's trial attorney was not ineffective for failing to reserve objections to the charge.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED DECEMBER 1, 2005 —

*Sexton & Morris, Joseph S. Key*, for appellant.
*Patrick H. Head, District Attorney, Timothy B. Lumpkin, Dana J. Norman, Amy H. McChesney, Assistant District Attorneys*, for appellee.