**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 30, 2012**

# In the Court of Appeals of Georgia

A12A1193. FEAGIN v. THE STATE.

MILLER, Judge.

Following a jury trial, Courtney Feagin was convicted of aggravated battery (OCGA § 16-5-24 (a)), criminal trespass (OCGA § 16-7-21 (a)), and hindering an emergency telephone call (OCGA § 16-10-24.3). Feagin filed a motion for new trial, which the trial court denied. On appeal, Feagin challenges the sufficiency of the evidence supporting his convictions. For the reasons that follow, we affirm Feagin's convictions for aggravated battery and criminal trespass. However, we must reverse Feagin's hindering an emergency telephone call conviction for lack of evidence. Accordingly, Feagin's convictions are affirmed in part and reversed in part.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and [Feagin] no longer enjoys a presumption of innocence. We neither weigh the evidence nor judge the

credibility of witnesses, but only determine whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Punctuation and footnotes omitted.) *Ferrell v. State*, 283 Ga. App. 471, 472 (1) (641 SE2d 658) (2007).

So viewed, the trial evidence showed that this incident arose out of an argument on December 24, 2010 between Feagin and his sister, the victim. A few weeks prior to the incident, the victim allowed Feagin to move into her home, where their mother and the victim's two young children also resided. On the morning of the incident, the victim began having a conversation with Feagin regarding the rules of the house and shared household duties. The victim gave Feagin an ultimatum, telling Feagin that he would have to leave if he did not comply with the rules. The conversation escalated into an argument. The victim testified that as the heated exchange continued, she grabbed her cell phone because she was "looking for something to . . . throw at that point in time" and "just in case [she] did need to call someone." The victim stated that she did not think about calling 9-1-1 and that "9[-]1[-]1 wasn't on [her] mind." After initially grabbing her cell phone, the victim subsequently placed it on the kitchen counter. Thereafter, Feagin grabbed the victim's

2

cell phone and "snapped it in half," rendering it inoperable. The victim testified that her cell phone was worth less than $500.

The victim retreated to the upstairs area of the residence, but Feagin followed her as they continued to argue. At that point, a physical altercation ensued. The victim described that Feagin began "swinging at [her] and [she] started swinging back at him, but [Feagin] got the first lick in[.]" The victim testified that Feagin hit her in the face, then fled from the residence.

The mother called 9-1-1 to report the incident. The responding officers observed that the victim's left eye was swollen shut. An officer took photographs depicting the victim's eye injuries. Another officer testified that the victim's eye injury was one of the worst that he had seen in handling a domestic fight call.

The victim was taken to the hospital for treatment. The emergency room physician who treated the victim testified that the victim had bruising and swelling around her eye such that her eye was swollen shut. A CAT scan further revealed that the victim's eye socket was fractured. The victim's injuries required treatment with narcotic pain medications and an antibiotic. The physician testified that the victim's eye injuries were clearly caused by trauma. The victim stated that her eye remained

3

swollen for approximately two weeks, and that the bruising around her eye remained for approximately two months after the incident.

The responding officers apprehended Feagin approximately one mile from the residence. After being advised of his *Miranda* rights, Feagin gave a statement to police, admitting that he had punched the victim in her face during the argument. Feagin was arrested, charged, and subsequently convicted of the aggravated battery, criminal trespass, and hindering an emergency call offenses stemming from the incident.

1. Feagin contends that the evidence was insufficient to support his aggravated battery conviction. The aggravated battery charge was based upon Feagin's alleged act of seriously disfiguring the victim's eye. Feagin argues that there was no evidence that the victim's eye was seriously disfigured as alleged. We disagree.

"A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another . . . by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). Although OCGA § 16-5-24 does not define the term "serious disfiguring," this Court has ruled that the crime of aggravated battery does not require that the victim's disfigurement be permanent; however, the injury must be more severe than a mere visible or superficial wound. See *Williams v.*

4

*State*, 248 Ga. App. 316, 318-319 (1) (546 SE2d 74) (2001). Notwithstanding this threshold for determining whether the disfiguring injuries meet the requisite level of seriousness to constitute an aggravated battery, we have further acknowledged that the circumstances of each aggravated battery vary; thus, whether a disfigurement is serious is almost always a question for the jury to resolve on a case-by-case basis. Id. at 318 (1).

The trial evidence in this case included photographs depicting the victim's severely swollen and bruised left eye, along with testimony that the victim's eye was swollen shut and her eye socket was fractured. The victim's injuries required treatment with narcotic pain medications and an antibiotic. The victim's eye injuries took several weeks to heal. The jury was authorized to find that the victim's severely swollen, bruised eye and eye socket fracture constituted serious disfigurement. See *Ferrell*, supra, 283 Ga. App. at 473 (2) (concluding that evidence of the victim's broken eye socket sufficiently supported the defendant's aggravated battery conviction); *Christensen v. State*, 245 Ga. App. 165, 167-168 (3) (537 SE2d 446) (2000) (testimony that the victim's eye socket was fractured and pictures showing the severity of the victim's eye injury caused by the attack sufficiently supported the defendant's aggravated battery conviction).

5

2. Feagin also challenges the sufficiency of the evidence supporting his criminal trespass conviction. He argues that there was no evidence that he broke the victim's cell phone as alleged in the indictment. His argument is without merit.

OCGA § 16-7-21 (a) pertinently provides that "[a] person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less[.]" The victim testified that during the incident, Feagin snapped her cell phone in half, rendering it inoperable. A photograph depicting the broken cell phone was admitted into evidence. The victim testified that her cell phone was worth less than $500. Although there was no evidence of the specific monetary amount of damage done to the cell phone, the jurors were authorized to draw from their own experience in forming an estimate of the damage to the cell phone, which is an everyday object. See *Burrell v. State*, 293 Ga. App. 540, 542-543 (2) (667 SE2d 394) (2008). The evidence was sufficient to authorize a rational trier of fact to find Feagin guilty beyond a reasonable doubt of the criminal trespass offense. See OCGA § 16-7-21 (a); see, e.g., *Ginn v. State*, 251 Ga. App. 159, 161 (2) (553 SE2d 839) (2001) (affirming defendant's conviction for criminal trespass based upon evidence that defendant damaged the family's keyboard during a dispute with his wife).

6

3. Feagin also contends that the evidence was insufficient to support his conviction for hindering an emergency telephone call. We agree, and therefore, Feagin's conviction of this charge must be reversed.

A person commits the misdemeanor offense of hindering an emergency telephone call when he "physically obstructs, prevents, or hinders another person with intent to cause or allow physical harm or injury to another person from making or completing a 9-1-1 telephone call or a call to any law enforcement agency to request police protection or to report the commission of a crime[.]" OCGA § 16-10-24.3. Significantly, the victim testified that when she grabbed her cell phone, she was not thinking of or attempting to call 9-1-1. Rather, the victim claimed that she picked up the cell phone during the argument because she was looking for something to throw.[1] The victim's testimony in this regard did not support a finding that Feagin had hindered a telephone call to 9-1-1 or to police. Consequently, Feagin's conviction of this offense was unauthorized.

---

[1] Although the victim also stated that she grabbed her cell phone "just in case [she] did need to call someone," she testified that she was not thinking about calling 9-1-1. There was no evidence that the victim had attempted to make an emergency call to police during the argument, and in fact, the victim subsequently placed her cell phone down on the kitchen counter.

The State nevertheless argues that Feagin's conviction of this offense was proper based upon the responding officer's testimony regarding the victim's prior report that she had grabbed the cell phone to call 9-1-1 when Feagin took the cell phone out of her hand and broke it in half. The State asserts that evidence of the victim's prior inconsistent statement to the responding officer was substantive evidence pursuant to *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982), ruling that "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." The State's reliance upon this principle, however, is unavailing.

Notably, a proper evidentiary foundation must be laid before a witness's prior inconsistent statement can be admitted. See *Edmond v. State*, 283 Ga. 507, 510 (6) (661 SE2d 520) (2008); *Duckworth v. State*, 268 Ga. 566, 567-568 (1) (492 SE2d 201) (1997); *Armour v. State*, 265 Ga. App. 569, 572-573 (3) (594 SE2d 765) (2004). "Before contradictory statements may be proved against [the witness], the time, place, person, and circumstances attending the former statement shall be called to [the witness's] mind with as much certainty as possible." (Punctuation and footnote omitted.) *Armour*, supra, 265 Ga. App. at 573 (3). "The purpose of laying such a

8

foundation is to give the witness the opportunity to explain or deny the prior contradictory statement." (Citations and punctuation omitted.) *Edmond*, supra, 283 Ga. at 510 (6); see also *Duckworth*, supra, 268 Ga. at 567-568 (1).

> Here, however, [the victim] testified before the issue of her alleged statement to [the responding officer] had been raised, and she was never questioned with the specificity necessary to establish the foundation for admission of any such statement. Thus, the trial court erred in admitting the testimony at issue as a prior inconsistent statement.

(Punctuation and footnote omitted.) *Edmond*, supra, 283 Ga. at 510 (6). Since the prior inconsistent statement was inadmissible due to lack of foundation, it could not serve as substantive evidence in this case. See id.; *Armour*, supra, 265 Ga. App. at 573 (3). Compare *Gibbons*, supra, 248 Ga. at 864-865 (concluding that a proper foundation for the use of the prior inconsistent statements was laid since the witness was questioned about his prior statements and given a chance to explain or deny them); *Buchanan v. State*, 282 Ga. App. 298, 299-300 (1) (638 SE2d 436) (2006) (concluding that the proper foundation had been laid for admission of the witness's prior inconsistent statements regarding the aggravated battery incident since the witness was questioned about his prior statements and was given the opportunity to admit, explain, or deny the prior statements).

9

Thus, the victim's prior statement to the responding officer was inadmissible hearsay, which is wholly without probative value and cannot be considered in determining the sufficiency of the evidence, even if introduced without objection. See *Patterson v. State*, 287 Ga. App. 100, 103-104 (2) (a) (650 SE2d 770) (2007). Since there was no proper evidence supporting the hindering an emergency telephone call offense, we must reverse Feagin's conviction of that charge.

*Judgment affirmed in part and reversed in part. Mikell, P. J., and Ray, J., concur.*