**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 21, 2025**

# In the Court of Appeals of Georgia

A24A1446. FULLER v. THE STATE.

DAVIS, Judge.

Christopher Fuller seeks review after a Coweta County jury found him guilty of rape, family violence aggravated assault, and related crimes. On appeal, he argues that (1) the trial court committed plain error in admitting character evidence as well as evidence of prior difficulties and incidents between himself and the victim; (2) the cumulative effect of these plain errors warrants a new trial; and (3) the evidence was insufficient to support his convictions for aggravated assault by strangulation and hindering an emergency phone call. Upon a close review of the record and the relevant law, we reverse Fuller's conviction for hindering an emergency phone call, but we otherwise affirm his convictions and the denial of his motion for new trial.

Viewed in the light most favorable to the jury's verdicts,[1] the evidence adduced at trial shows that Fuller became romantically involved with Bernadette Scott[2] in 2012. The two were briefly married in 2013, but they reconciled soon after the divorce and rekindled a relationship. Fuller moved in with Scott in her house in Newnan, Georgia, in May 2014. Scott paid the mortgage and bills for the home while Fuller provided "sporadic" financial help from his employment with a food service company. During the course of the relationship, there were "instances of domestic violence" where Fuller physically assaulted Scott, and the number of incidents and degree of severity worsened over time, particularly following their reconciliation after the divorce. Scott had five children from a previous relationship, and the children "[did not] feel good about [Fuller]" and did not want to come around when he was present, which strained their relationship with their mother.

On March 31, 2018, Scott joined Fuller on a work trip to Alabama. During the trip, the two had an argument about their financial situation, and on the way home, the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[2] There appears to be a conflict in the record as to the victim's last name. At trial, she testified that her name was Bernadette Scott-Fuller. Fuller, however, refers to her name as Bernadette Scott-Williams, and the State refers to her as Bernadette Scott. To avoid confusion, we refer to her as Bernadette Scott.

two had another argument about how Scott had scratched Fuller's truck. When they arrived back home around 9:00 PM, Scott went to retrieve the mail from the mailbox when Fuller rushed towards her, knocked her to the ground, and began stomping on her. Scott ran upstairs to a bathroom, Fuller followed her up, and he kicked open the bathroom door. A physical altercation ensued, wherein Fuller yelled about how he was going to kill her and then "tried to twist [her] neck." Scott wedged herself between two doors to prevent Fuller from getting a grip on her, but Fuller was able to get his hands around her neck, apply pressure, and tried "to pull it to twist [her] body with [her neck]." Sometime during the altercation, Scott attempted to use her phone to "call for help," but Fuller threw the phone to the floor and broke it. Scott was able to get away and went to the bedroom, where Fuller ordered her to take her clothes off. Scott told Fuller that she did not want to have sex with him, but he pulled her pants down and raped her. Fuller then left the premises, and Scott fled in her car, calling 911 from her car's SOS call feature.

A grand jury indicted Fuller on one count of rape (OCGA § 16-6-1), two counts of family violence aggravated assault (OCGA § 16-5-21), one count of false imprisonment (OCGA § 16-5-41), one count of family violence battery (OCGA § 16-5-

23.1), and one count of hindering an emergency telephone call (OCGA § 16-10-24.3). At trial, the jury found Fuller guilty on all counts, and the trial court sentenced Fuller to life imprisonment with the possibility of parole after 25 years served. Fuller filed a motion for new trial, which the trial court denied. This appeal followed.

1. In three related enumerations of error, Fuller argues that the trial court committed plain error by admitting evidence of prior difficulties between Fuller and Scott as well as evidence of the couple's financial difficulties and the fact that Scott's children did not like him and disapproved of their relationship, and he argues that the cumulative effect of these errors warrants a new trial. We conclude that Fuller has not shown that the trial court plainly erred in admitting this evidence.

Because Fuller admits that he did not object to the admission of these pieces of evidence at trial, we will review this enumeration of error only for plain error. *Kirkland v. State*, 318 Ga. 639, 654 (4) (898 SE2d 536) (2024).

> To show plain error, a defendant must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings. We need not analyze all of the

elements of the plain-error test when the defendant has failed to establish one of them.

(Citation and punctuation omitted.) Id. at 655 (4).

(a) Fuller first argues that the trial court plainly erred by admitting evidence of the prior incidents of domestic abuse between Fuller and Scott because the evidence was inadmissible under OCGA § 24-4-404 (b). He argues that any probative value provided by the incidents was substantially outweighed by the danger of unfair prejudice and that Scott's statements about the prior incidents were too vague for a jury to conclude that Fuller committed such acts.

"Under OCGA § 24-4-404 (b), evidence of a defendant's prior acts toward another person may be admissible into evidence when the defendant is accused of a criminal act against that person, where the nature of the relationship between the defendant and the victim sheds light on the defendant's motive in committing the offense charged." (Citation and punctuation omitted.) *Payne v. State*, 313 Ga. 218, 222 (1) (869 SE2d 395) (2022). Here, we see no obvious or plain error in the admission of Scott's testimony because it was probative to show the nature of the parties' relationship and on Fuller's potential motive in using violence against Scott. See id.

at 221-222 (1) (no plain error in admitting evidence of a prior altercation between the defendant and the victim); see also *Sconyers v. State*, 318 Ga. 855, 861 (1) n.4 (901 SE2d 170) (2024) (no plain error in admitting evidence of "prior difficulties" consisting of arguments and physical altercations between the defendant and the victim); *Flowers v. State*, 307 Ga. 618, 621-622 (2) (837 SE2d 824) (2020) (prior instances of domestic abuse by the defendant against the victim were relevant to prove the defendant's motive in killing her); *Smart v. State*, 299 Ga. 414, 417-418 (2) (a) (788 SE2d 442) (2016) (same). Accordingly, Fuller has not shown that the trial court plainly erred in allowing evidence of the prior incidents of domestic abuse between Fuller and Scott.

(b) Fuller also argues that it was plain error to admit character evidence about his employment and financial situation and Scott's children's dislike of him and disapproval of his relationship with Scott. Fuller argues that such evidence was inadmissible under OCGA §§ 24-4-403 and 24-4-404.

As to the evidence of Fuller's employment and financial situation, because the financial relationship between Fuller and Scott was the impetus behind one of the arguments that led up to the resultant physical altercation, it constituted intrinsic

evidence bearing directly on the charged conduct, and so it was not subject to exclusion under OCGA § 24-4-404 (b). See *Brooks v. State*, 298 Ga. 722, 726 (2) n.11 (783 SE2d 895) (2016) ("Evidence is intrinsic if it is . . . necessary to complete the story of the crime[.]") (citation omitted); see also *Wimberly v. State*, 302 Ga. 321, 325-326 (2) (b) (806 SE2d 599) (2017) (evidence that the defendant had threatened to kill the victim's brother was intrinsic evidence because the threat ultimately led to the argument and altercation between the defendant, the victim, and the victim's brother that resulted in the victim's murder). Additionally, because evidence of the parties' financial relationship was "integral to the narrative surrounding the crimes, its probative value was not substantially outweighed by the risk of undue prejudice," (Citation and punctuation omitted.) *Brewner v. State*, 302 Ga. 6, 14 (3) (804 SE2d 94) (2017), and so the evidence was also admissible under OCGA § 24-4-403.

As for the evidence presented that Scott's children did not "feel good" about Fuller or his relationship with Scott, even assuming that such testimony was impermissible character evidence under OCGA § 24-4-404 (a), we conclude that its admission was harmless.[3] The State presented strong evidence of Fuller's guilt in the

---

[3] "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. And in making that

form of Scott's testimony as well as photographs of Scott's injuries and forensic and DNA evidence from a sexual assault exam. On the other hand, the fact that Scott's children did not like Fuller had little bearing on the issues in the case, especially in light of Scott's testimony that her children were not aware of any instances of domestic abuse. Considering the evidence presented at trial, and weighing it as we believe reasonable jurors would have done, we conclude that the admission of this testimony did not contribute to the jury's verdicts. See *Timmons v. State*, 302 Ga. 464, 470-471 (2) (b) (807 SE2d 363) (2017) (erroneous admission of character evidence was harmless in light of the strong evidence of the defendant's guilt).

(c) Fuller finally argues that the cumulative effect of these plain errors warrants a new trial. However, "to establish cumulative error, [Fuller] must show that at least two errors were committed in the course of the trial." (Citation and punctuation omitted.) *Holland v. State*, 314 Ga. 181, 193 (4) (875 SE2d 800) (2022). We have only presumed one error as to the admission of evidence of Scott's children's dislike of

---

determination, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so." (Citations and punctuation omitted.) *Pritchett*, supra, 314 Ga. at 778-779 (2) (c).

Fuller, so there are no other presumed trial court errors to aggregate, and cumulative error analysis is not applicable here. Id.

2. Fuller also argues that the evidence was insufficient to support one of his convictions for family violence aggravated assault and his conviction for hindering an emergency phone call. He argues that the State failed to present evidence that he committed strangulation and that it failed to show that Scott was attempting to call 911 when he took her phone away. We conclude that the evidence was sufficient to support the aggravated assault charge, but we agree with Fuller that the evidence was insufficient to support the hindering an emergency phone call charge.

> When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. It is the sole province of the trier of fact to resolve conflicts in the testimony, and this Court neither weighs the evidence nor determines witness credibility. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the trier of fact's verdict will be upheld.

(Citations and punctuation omitted.) *Huff v. State*, 361 Ga. App. 559, 560 (1) (864 SE2d 706) (2021).

9

(a) To establish the offense of aggravated assault as charged in Count 3 of the indictment, the State was required to prove that Fuller assaulted Scott with objects, devices, or instruments – here, his hands or arm – which, when used offensively, were likely to result in strangulation. OCGA § 16-5-21 (a) (3). "Strangulation" is defined, in relevant part, as "impeding the normal breathing or circulation of blood of another person by applying pressure to the throat or neck of such person[.]" OCGA § 16-5-19 (11).

Here, the State presented evidence that during the altercation, Fuller "tried to twist [Scott's] neck" and that he was able to get his hands around her neck, apply pressure, and tried "to pull it to twist [her] body with [her neck]." Photos of her injured neck were presented to the jury. We conclude that this evidence was sufficient for a rational jury to find that Fuller assaulted Scott in a way that was likely to result in strangulation. See *Maxwell v. State*, 348 Ga. App. 870, 871-872, 873 (1), (825 SE2d 420) (2019) (testimony that the defendant had the victim in a choke hold and appeared to be applying pressure to the neck of the victim was sufficient to support a conviction for aggravated assault by strangulation).

Fuller argues that the evidence was insufficient because there was no evidence presented that Scott's breathing or circulation of blood was actually impeded by his actions. However, "the State did not have to show that [Fuller] impeded [Scott's] normal breathing or circulation of blood, only that [his] offensive use of his hands around her neck was *likely to* result in strangulation." (Emphasis supplied; punctuation omitted.) *Murphy v. State*, 370 Ga. App. 738, 741 (1) (899 SE2d 307) (2024). Because the jury was authorized to find from the evidence presented that Fuller placed his hands around Scott's throat and applied pressure, which could very likely impede her normal breathing or blood circulation, we reject this enumeration of error. *Maxwell*, supra, 348 Ga. App. at 873, 875 (1-2).

(b) To prove that Fuller committed the crime of hindering an emergency phone call, the State was required to prove that he "verbally or physically obstruct[ed], prevent[ed], or hinder[ed] another person with intent to cause or allow physical harm or injury to another person from making or completing a 9–1–1 telephone call or a call to any law enforcement agency to request police protection[.]" OCGA § 16-10-24.3.

Here, the State presented evidence that, sometime during the altercation, Scott attempted to use her phone to "call for help," but Fuller threw the phone to the floor

11

and broke it. However, Scott did not clarify exactly who she was intending to call for help, and we agree with Fuller that, on its own, this testimony is too vague to support an inference that Scott was attempting to call 911 or the police at the time Fuller broke her cell phone. Scott's testimony that she attempted to "call for help" could reasonably imply that she was attempting to contact any number of non-police entities or individuals, such as her family or nearby friends or neighbors. Cf. *Feagin v. State*, 317 Ga. App. 543, 544 (731 SE2d 778) (2012) (although victim grabbed her cell phone during an argument "just in case she did need to call someone," she was not thinking about calling 911) (punctuation omitted). Notably, even after Fuller left, it appears that Scott first called her sister for help before calling 911. We therefore cannot conclude that the evidence was sufficient to support a finding that Fuller had hindered a telephone call to 911 or to the police. See *Feagin*, supra, 317 Ga. App. at 544, 546-547 (3) (evidence was insufficient to support conviction for hindering an emergency telephone call where, although defendant broke the victim's phone and victim testified that she had grabbed her phone "just in case she did need to call someone," there was no evidence that victim was planning to call 911 or the police at the time the

12

phone was broken) (punctuation omitted). We must therefore reverse Fuller's conviction for hindering an emergency telephone call.

Accordingly, we reverse Fuller's conviction for hindering an emergency phone call, but we otherwise affirm his convictions and the denial of his motion for new trial.

*Judgment affirmed in part and reversed in part. Markle and Land, JJ., concur.*