318 Ga. 639
FINAL COPY

S23A0942. KIRKLAND v. THE STATE.
S23A0943. OGLETREE v. THE STATE.


ELLINGTON, Justice.


A Fulton County jury found co-defendants Mark Kirkland and Kendrick Ogletree guilty of malice murder and other offenses in connection with the arson-related deaths of Deangelo Barbary and Debra Morris.[1] Both Kirkland and Ogletree contend that the trial

---

[1] On July 14, 2017, a Fulton County grand jury returned an indictment charging Kirkland and Ogletree with murder (two counts), felony murder (two counts), and arson in the first degree, and charging Ogletree with conspiracy to commit arson in the first degree and criminal solicitation. Kirkland and Ogletree were tried beginning on November 13, 2019, and on November 22, 2019, the jury found them guilty on all counts. On December 3, 2019, the trial court sentenced Ogletree to life in prison without the possibility of parole for the malice murder of Barbary, a concurrent sentence of life in prison with the possibility of parole for the malice murder of Morris, a consecutive ten-year sentence for conspiracy to commit arson in the first degree, and a concurrent three-year sentence for criminal solicitation. The two counts charging Ogletree with felony murder were vacated, and the count of arson in the first degree merged at sentencing with one of the malice murder counts. Kirkland was sentenced the same day to life in prison without the possibility of parole for the malice murder of Barbary and a concurrent life sentence without the possibility of parole for the malice murder of Morris. Kirkland's two counts of felony murder were vacated, and the count of arson in the first degree merged at sentencing. Ogletree timely filed a motion for a new trial, which he amended through new counsel on March 31, 2022. Kirkland also filed a timely motion

court erred by admitting improper character evidence and by instructing the jury that it could consider this evidence to prove their identity in the charged crimes. Kirkland also contends that the trial court erred by failing to suppress evidence of a witness's identification of him in a photo lineup and admitting Ogletree's inculpatory out-of-court statements, that trial counsel was constitutionally ineffective, and that the cumulative prejudice from errors at trial deprived him of a fair trial. Ogletree separately contends that the State's evidence was insufficient to support his convictions for murder, felony murder, and arson in the first degree beyond a reasonable doubt.

As explained below, we conclude that Kirkland has failed to prove that the trial court abused its discretion by admitting evidence related to an eyewitness's identification of him in a photo

---

for a new trial, which he amended through new counsel on March 31, 2022, April 1, 2022, and August 2, 2022. After a hearing was held on the motions for a new trial, the court entered orders denying both motions on March 29, 2023. Both Kirkland and Ogletree filed timely notices of appeal, and their cases were docketed in this Court to the August 2023 term and submitted for a decision on the briefs.

lineup, that trial counsel's assistance was constitutionally ineffective in any of the ways alleged, or that it was plain error to admit evidence related to Ogletree's pre-trial out-of-court statements to his cellmate. We also conclude that the evidence was sufficient to support Ogletree's convictions for murder. Finally, we conclude in both appeals that the evidence about which Kirkland and Ogletree complain was admissible and that although the trial court erred in its final instruction to the jury about the proper use of admitted evidence of other acts, the improper instruction did not affect the outcome of the proceedings considering the instructions as a whole and given the strong evidence of guilt presented by the State. Accordingly, we affirm both Kirkland's and Ogletree's convictions.

The evidence presented at trial showed the following. In 2015, Ogletree resided at 712 Jett Street and was a neighbor of Karen Lyman, who lived at 716 Jett Street with six others, including the two victims in this case, Barbary and Morris. Drugs were known to be sold out of both 712 and 716 Jett Street, and there had been

altercations and disputes between residents of the two households, primarily related to Ogletree's concerns that residents of 716 Jett Street were interfering with his drug business, which he conducted with Kirkland. On November 9, 2015, a dog owned by James Hardwick, who lived at 716 Jett Street, broke out from his yard and knocked down one of Ogletree's customers as he approached Ogletree's house to purchase drugs. When the customer left, Ogletree confronted Hardwick and said that he was "going to do something" because of the incident with the dog. That evening, Ogletree, who was still angry, called the landowner of 716 Jett Street and threatened to sue.

Shortly after midnight on November 10, 2015, a man later identified by three eyewitnesses as Kirkland walked onto the front porch of 716 Jett Street, lit an incendiary device, and threw it at the front door, causing the house to erupt into flames. The bodies of both Barbary and Morris were discovered by investigators in the ashes. Following an autopsy, it was determined that both victims died from inhalation of products of combustion, deep tissue burns,

4

and thermal injuries. Investigators also determined, based on burn patterns, information gathered from witnesses, and the presence of gasoline on the front porch and front door, that the fire was intentionally set.

Investigators quickly focused their investigation on Kirkland based on the statements of three witnesses, Qyoneshia Beard, Betty Beard, and Stantecia Williams, who each told investigators they were driving together on Jett Street just before the fire started and saw a man wearing black clothing and a black skullcap on the front porch of 716 Jett Street. They said the man shook an object, threw the object at the house, and ran away to the back yard of 712 Jett Street as the front porch and door of 716 Jett Street burst into flames. Mykia Copeland, who also lived at 716 Jett Street, told investigators that as she left her house just before the fire started, she saw a person wearing all black clothing and a black skullcap walking from Ogletree's house toward her house.

Investigators executed a search warrant at 712 Jett Street on November 10, 2015. There, they found no evidence linked to the

fire, but Ogletree spontaneously told Detective Kyle Kleinhenz, the lead detective investigating the arson and murders, "You are not going to find any gas in the house." Kleinhenz, at that time, did not know the fire's origin and had not told Ogletree that they were looking for gasoline.

Several witnesses at trial testified about ongoing disputes between Ogletree and the residents of 716 Jett Street. According to these witnesses, Ogletree had previously accused Hardwick and Hardwick's father, who sold drugs out of the house at 716 Jett Street, of being "snitches." Ogletree claimed that Hardwick and his father told the police about Ogletree's drug sales, resulting in the February 2015 raid of Ogletree's house and the arrest of Kirkland and Ogletree. Ogletree had also complained to several others about people interfering with his customers and "slowing up" his money, and had urged the owner of 716 Jett Street to evict Lyman.

In her first conversation with the investigators on November 10, Qyoneshia said she saw a skinny, male teenager with dark skin wearing a black hoodie throw something at the house and then run

to the house next door. She gave a second statement later that morning in which she said she saw a light-skinned male wearing all black clothing set fire to the house and run to Ogletree's house. She recognized this person from him "being around" at Ogletree's house. Detective Kleinhenz then showed Qyoneshia a six-person photo lineup and admonished her that the lineup may or may not include a photo of the person and that she should only make an identification if she could do so. Qyoneshia immediately identified a photo of Kirkland as the person she saw wearing a black skullcap and black camouflage clothing who "came right out of the back of the house that night." When Detective Kleinhenz specifically asked whether Kirkland was the man Qyoneshia saw on the porch, she stated, "[h]e could have been"; he "fits the description of the person." Because Qyoneshia immediately recognized Kirkland as the person running away from the fire, Detective Kleinhenz asked her to circle Kirkland's photo.

A second photo lineup was shown to Qyoneshia on December 2, 2015, after Qyoneshia's mother told investigators that Ogletree

threatened her, warning her that Qyoneshia "better not" testify.[2]

Using the same photos as in the first lineup but in a different order, Detective Kleinhenz and Detective David Quinn, who knew Qyoneshia's mother and was assisting with the investigation, presented Qyoneshia with the photos and asked her to describe again what she saw on the night of the crimes. Qyoneshia said she saw a male on the porch, and the male ran away when she started to scream. When pressed as to whom she saw on the porch, she replied, "the red man," and described "the red man" as someone she had known from the neighborhood for three or four years. She said, "the red man" was dressed in black pants, boots, and a black hoodie, she saw him throw something at the front door and run next door, and then she saw the fire. After answering a few more questions, Qyoneshia identified a photo of Kirkland as depicting the man she saw. When Detective Quinn asked her why she hesitated to identify Kirkland in the first lineup, she replied,

---

[2] Qyoneshia also testified that prior to trial, another man, someone she knew to be associated with Ogletree, told her not to testify.

"fear."

At trial, Qyoneshia again identified Kirkland from the witness stand as the man she saw set fire to 716 Jett Street. She testified that she was intentionally vague in her first statement because her uncle, who sold drugs from the house at 716 Jett Street, told her to be quiet and let the "street" handle it. Betty Beard and Stantecia Williams also identified Kirkland from the witness stand as the man they saw throw something at the front of 716 Jett Street and then run toward Ogletree's house. Williams further testified that she saw Kirkland outside Ogletree's house about an hour after the fire wearing different clothing.

While Ogletree was incarcerated and awaiting trial, the prosecutor's office received a letter from Ogletree's cellmate, Gregory Escobar, indicating that Ogletree had made statements about the fire. Escobar gave a recorded statement that was played at trial in which he stated that Ogletree said he had attempted to pay someone to set fire to 716 Jett Street on another occasion but the man he hired took his money. Escobar also testified that

9

Ogletree told him Kirkland was his boyfriend; that Ogletree nodded when Escobar asked him whether he knew that Kirkland went to the neighbors' house to set the fire; that Ogletree said "the kerosene" had been in his basement; and that after the fire, he instructed Kirkland to change out of his clothes because someone may have seen him. While talking about the fire, Ogletree told Escobar, "I got that b**ch."

The State presented evidence at trial of another fire at 716 Jett Street that occurred in 2014, sixteen months before the November 10 fire. That fire, like the November 10 fire, occurred within a day of Ogletree's argument with a resident of 716 Jett Street. Officials were unable to determine the cause of the 2014 fire or whether an accelerant was used.

The State also presented evidence showing that Kirkland and Ogletree were arrested together in February 2015 and charged with possession of heroin with the intent to distribute. Their arrests resulted from a narcotics investigation based on two controlled buys of heroin from Ogletree's home in January and

February 2015 that culminated in the execution of a search warrant. During the search of Ogletree's house, officers found heroin, marijuana, $696 in cash, razors, a scale, and packing materials. The charge against Kirkland was later dismissed, but Ogletree was tried and convicted.

Portions of audio-recordings of two witness interviews conducted during the investigation of the November 10 fire were also played at trial. In the first, Victor Reese told investigators that a month before the November 10 fire, Ogletree gave him $500, a bucket filled with gasoline, and a hooded jacket and told him to set fire to a house on Jett Street by throwing gas on the front door. Reese declined Ogletree's offer, however. Ogletree told Reese he wanted to set the fire because "they were messing with his money."

In the second recorded interview, Jerrel Hampton, who had known Ogletree for at least 25 years, told investigators that on two occasions Ogletree offered him money to set fire to 716 Jett Street. Ogletree first asked Hampton to set fire to the house in 2013 and asked him again on November 10, 2015. On the second occasion,

11

Ogletree offered Hampton $500 to set the fire and suggested he do it at night with gasoline or an accelerant. When he made this offer, Ogletree told Hampton he wanted to start the fire because someone at 716 Jett Street pulled a gun and threatened him.[3] Hampton declined Ogletree's offer to set the fire.

*S23A0942. Kirkland v. The State*

1. Kirkland argues that the second lineup in which Qyoneshia identified him as the arsonist was unduly suggestive because she was told to circle Kirkland's photo in the first lineup, the same six photos were used in the second lineup as in the first, no admonitions were given, and, he asserts, a detective told her to pick a photo, suggesting that she had to pick a photo. Kirkland argues that these circumstances invalidated the second identification procedure and that the trial court erred by not suppressing evidence related to Qyoneshia's second identification of him.

---

[3] Both Reese and Hampton testified at trial that they talked with investigators about their role in a prior arson attempt, but they claimed that they had lied to the investigators. Consequently, the State impeached them with their prior recorded statements.

The record shows that investigators presented Qyoneshia with a second lineup after they learned that Ogletree had threatened her. The second lineup contained the same six photos as the first, but the photos were placed in a different order. During this procedure, Detective Quinn handed the photos to Qyoneshia and said, "just say the number." Qyoneshia then identified Kirkland's photo. Kirkland's counsel filed a pre-trial motion to suppress evidence related to the second lineup, but the motion was denied based on the trial court's conclusion that neither lineup was impermissibly suggestive.

> An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, "This is our suspect." Where the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification.

*Williams v. State*, 286 Ga. 884, 888 (4) (b) (692 SE2d 374) (2010) (citation and punctuation omitted). A trial court's ruling that a lineup was not impermissibly suggestive is reviewed for an abuse of

13

discretion. *Westbrook v. State*, 308 Ga. 92, 99 (4) (839 SE2d 620) (2020).

Here, the record does not support Kirkland's contentions that the detectives' actions during the second lineup led Qyoneshia to the "virtually inevitable" conclusion that Kirkland was the perpetrator. See *Williams*, 286 Ga. at 888 (4) (b). Kirkland cites no authority for his proposition that use of the same photos in both lineups unduly suggested that Qyoneshia should pick a particular photo, and we have previously held that a lineup where the witness was shown the same photo of the defendant in two lineups using the same photos in a different order was not unduly suggestive. *Kirkland v. State*, 310 Ga. 738, 742 (2) (b) (854 SE2d 508) (2021). See also *Clark v. State*, 279 Ga. 243, 245 (4) (611 SE2d 38) (2005) (no abuse of discretion in trial court's ruling that a lineup was not impermissibly suggestive where the witness was shown two lineups and the defendant's photo was the only photo to appear in both). The identification procedure used in this case was the same as that used

14

in *Kirkland*, 310 Ga. at 740 (2), and was no more suggestive than the procedure in *Clark*.

As for Detective Quinn's suggestion that Qyoneshia "say the number," the record shows that his request was not equivalent to telling her which photo she should select or even that she had to pick a photo. Rather, viewing the request in context, this request is reasonably understood as Detective Quinn's response to Qyoneshia's fear of identifying a suspect by saying that she did not need to say the suspect's name. See *Ivey v. State*, 277 Ga. 875, 876-877 (3) (596 SE2d 612) (2004) (concluding that officer's question whether "one of the guys pictured is the one [who committed the crimes]" did not lead the witness "to the inevitable identification of [the defendant] as the perpetrator" (punctuation omitted)).

Nor do we see merit in Kirkland's claim that the second lineup was unduly suggestive because Qyoneshia circled his photo in the first lineup or the detectives failed to read an admonition form to her. The record does not show that these circumstances can reasonably be said to have led Qyoneshia to the "virtually inevitable

15

identification of [Kirkland] as the perpetrator." *Williams*, 286 Ga. at 888 (4) (b) (citation and punctuation omitted). See also *Roseboro v. State*, 308 Ga. 428, 434 (2) (a) (841 SE2d 706) (2020) (failure to read an admonition form to the witness before making the identification did not make the procedure unduly suggestive); *Ivey*, 277 Ga. at 876-877 (3) (concluding that, although "it would have been preferable for the investigating officer to give the witness the standard admonition that the lineup may or may not contain a picture of the perpetrator," the officer's failure to do so did not make the identification procedure impermissibly suggestive). Accordingly, the trial court did not abuse its discretion by denying Kirkland's motion to suppress Qyoneshia's identification of him in the second lineup. See *Thomas v. State*, 310 Ga. 579, 585 (4) (853 SE3d 111) (2020).

2. In several enumerations of error, Kirkland contends that trial counsel rendered constitutionally ineffective assistance. To prevail on a claim of ineffective assistance of counsel, Kirkland must show "both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense." *Lockhart v.*

16

*State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016). See also *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Kirkland must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Lockhart*, 298 Ga. at 385 (2) (citation and punctuation omitted). To meet the prejudice prong, Kirkland must establish "a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different." Id. at 385 (2). "If the defendant fails to satisfy either the 'deficient performance' or the 'prejudice' prong of the *Strickland* test, this Court is not required to examine the other." *Redding v. State*, 297 Ga. 845, 850-851 (5) (778 SE2d 774) (2015).

We address Kirkland's claims of ineffective assistance in turn.

(a) Kirkland first contends that trial counsel was ineffective for failing to challenge the second lineup in his pre-trial motion to suppress on the same grounds on which he challenges the admission

of this evidence on appeal. See Division 1, supra. His claim is belied by the record, however, which shows that counsel made the arguments at the hearing on his motion to suppress that Kirkland now contends should have been raised. Furthermore, Kirkland's mere assertion that the trial court would have granted the motion if counsel had "more thoroughly" raised these same arguments does not explain what else counsel should have argued that would have resulted in a different outcome.[4] For these reasons, Kirkland has failed to show deficient performance on this ground. See *Washington v. State*, 312 Ga. 495, 503 (3) (b) (863 SE2d 109) (2021) ("[D]eficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed." (citation and

---

[4] In a related claim, Kirkland argues that counsel was deficient for failing to call Detective Quinn as a witness at the motion to suppress hearing. Because he failed to make any showing of what evidence Detective Quinn would have offered about the lineup procedure had he been called as a witness that was not admitted through Detective Kleinhenz's testimony, this claim also fails. See *Lupoe v. State*, 284 Ga. 576, 578-579 (3) (b) (669 SE2d 133) (2008) (defendant did not demonstrate ineffective assistance based on trial counsel's failure to call an alibi witness where no testimony substantiated the claim that the witness's testimony would have been favorable).

punctuation omitted)); *Brown v. State*, 303 Ga. 617, 621 (2) (b) (814 SE2d 364) (2018) (trial counsel's performance was not deficient in allegedly failing to cross-examine a witness about a particular issue when counsel did explore that issue on cross-examination and the appellant presented no argument as to how counsel could have better developed that issue).

(b) Kirkland also asserts trial counsel provided ineffective assistance by failing to establish at the hearing on his motion to suppress that the detectives conducting the second lineup engaged in malfeasance or coercive behavior by telling Qyoneshia to "say the number" and not admonishing her as was done at the first lineup. We held in Division 1, supra, however, that the trial court did not abuse its discretion in admitting evidence of Qyoneshia's identification of Kirkland in the second lineup, and counsel cannot be faulted for failing to move to suppress evidence on a ground that would not have succeeded. See *Peacock v. State*, 314 Ga. 709, 721-723 (4) (878 SE2d 247) (2022) (counsel was not ineffective for failing to move to suppress evidence on a ground that would not have

19

succeeded); *White v. State*, 307 Ga. 882, 889 (3) (c) (838 SE2d 828) (2020) (counsel's failure to make a meritless motion does not support a finding of ineffective assistance of counsel). Thus, Kirkland has failed to show deficient performance with regard to this claim.

(c) Kirkland next asserts that trial counsel provided ineffective assistance because he failed to investigate more thoroughly Qyoneshia's identification of Kirkland as the arsonist and failed to ask her on cross-examination whether Kirkland was "the red man," to whom she referred when she spoke with the investigators. Had counsel done so, he argues, the jury may have believed Qyoneshia first identified Ogletree as "the red man," thus creating reasonable doubt regarding her subsequent identification of Kirkland.

"In the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) (citation and punctuation omitted). Decisions about the investigation of a case and what questions to ask on cross-examination are quintessential trial

20

strategy and will not constitute ineffective assistance unless they are so patently unreasonable that no competent attorney would have chosen that approach. *Watts v. State*, 308 Ga. 455, 460 (2) (841 SE2d 686) (2020) (decisions about what questions to ask on cross-examination are quintessential trial strategy and rarely constitute ineffective assistance); *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013) (counsel's tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was "so patently unreasonable that no competent attorney would have chosen it" (citation and punctuation omitted)).

Viewing counsel's investigation and cross-examination decisions in this light, we conclude that Kirkland has failed to meet his burden of proving that trial counsel's performance was deficient. Trial counsel testified at the motion for a new trial hearing that he tried but was unsuccessful in his efforts to interview Qyoneshia before trial. Nevertheless, after reviewing the State's file, he filed a motion to suppress evidence of her identification of Kirkland in the photo lineups. That motion was denied. After Qyoneshia identified

21

Kirkland at trial as the arsonist, counsel attempted on cross-examination to both cast doubt on her identification and challenge the completeness of the State's investigation by showing that investigators were "laser focused" on Kirkland to the exclusion of other possible suspects. Under these circumstances, we cannot say that trial counsel's investigation of Qyoneshia's identification of Kirkland or his tactical decisions about cross-examining Qyoneshia were patently unreasonable. See *Davis v. State*, 306 Ga. 140, 146 (3) (e) (829 SE2d 321) (2019); see also *Head v. State*, 288 Ga. App. 205, 208 (2) (653 SE2d 540) (2007) (counsel's decision not to question a witness about an inconsistent statement was a question of trial strategy not amounting to ineffective assistance).

Moreover, Kirkland has failed to show prejudice with regard to this claim because he made no proffer of what a more thorough investigation would have uncovered or what Qyoneshia would have said if she was asked about her reference to "the red man." Qyoneshia was not called as a witness at the hearing on his motion for a new trial, and Kirkland introduced no evidence as to what

22

Qyoneshia would have said in response to the unasked question. Accordingly, Kirkland has failed to demonstrate ineffective assistance on this ground. See *Anthony v. State*, 302 Ga. 546, 553-554 (IV) (807 SE2d 891) (2017) (defendant failed to show counsel's failure to investigate a potential witness was deficient in the absence of any evidence that the witness would have provided relevant evidence); *Lupoe v. State*, 284 Ga. 576, 578-579 (3) (b) (669 SE2d 133) (2008) (defendant did not demonstrate ineffective assistance based on trial counsel's failure to call an alibi witness where no testimony substantiated the claim that the witness's testimony would have been favorable).

(d) Kirkland contends that counsel provided ineffective assistance by failing to object to statements made at trial referencing his use of drugs and his sexual relationship with Ogletree, as well as a witness's comment suggesting that Kirkland "don't really like nobody." Kirkland contends this evidence was inadmissible under OCGA § 24-4-404 ("Rule 404") (a) and (b) because it placed his character in evidence and under OCGA § 24-4-

403 ("Rule 403") because its probative value was substantially outweighed by its prejudice.

(i) *Failure to Object to Evidence of Kirkland's Drug Use*

Statements about Kirkland's drug use and his dislike of others were admitted through the testimony of Betty Beard as she responded to the prosecutor's question regarding how she knew Kirkland. While explaining that she knew Kirkland from the neighborhood, she briefly commented that she and Kirkland frequented some of the same drug houses and then added that she thought Kirkland was "like a sick person. He don't really like nobody." The State asked no follow-up questions related to Kirkland's drug use or Betty Beard's opinion of Kirkland's personality. At the motion for a new trial hearing, Kirkland's counsel stated that he did not believe the comment about Kirkland's drug use would have any effect on the jury's findings regarding identity, which was the main issue in the case, because the case was about a dispute in a neighborhood where everyone knew each other and drugs were prevalent. For this reason, rather

24

than highlighting the drug evidence by objecting, he focused on discrediting Betty Beard's identification testimony.

Betty Beard's response that she knew Kirkland from the neighborhood and that they had spent time together was relevant to show the basis and credibility of her identification of Kirkland. Although her comment that the houses they frequented were drug houses may have incidentally put Kirkland's character at issue, it was a single, brief reference in a case where evidence of drug use and the sale of drugs in the neighborhood and by the residents of both 712 and 716 Jett Street was prevalent. Under these circumstances, we cannot say that counsel's strategic decision to forgo objecting to her fleeting comment and instead focus the jury's attention on weaknesses in her identification of Kirkland as the arsonist was so patently unreasonable that no competent lawyer would have made the same decision. See *Hayes v. State*, 298 Ga. 98, 105 (2) (c) (779 SE2d 609) (2015) ("The matter of when and how to raise objections is generally a matter of trial strategy." (citation and punctuation omitted)); *Johnson v. State*, 294 Ga. 86, 92-93 (7) (b)

25

(750 SE2d 347) (2013) (counsel's decision to forgo objection to witness's testimony in favor of impeaching the witness was reasonable trial strategy and did not support an ineffectiveness claim); *Armour v. State*, 290 Ga. 553, 556 (2) (c) (722 SE2d 751) (2012) (finding no prejudice in fleeting introduction of evidence of prior charges because the charges were never mentioned again, the defendant was impeached on other grounds, and the evidence against the defendant was strong). Kirkland, therefore, has failed to demonstrate constitutionally deficient performance, and this claim fails.

(ii) *Failure to Object to Evidence that Kirkland Did Not Like Other People*

With regard to Betty Beard's unsolicited opinion about whether Kirkland was a "sick" person and "liked" other people, Kirkland has failed to show that counsel's failure to object was unreasonable given that it was a passing reference that did not obviously implicate Kirkland's character and any potential prejudice was minimized by the fact that no additional questions were asked.

See generally *Johnson v. State*, 256 Ga. 604, 605 (2) (351 SE2d 623) (1987) (decided under former OCGA § 24-2-2) (witness's passing reference to a defendant's criminal record did not place defendant's character in evidence). Accordingly, this claim fails because Kirkland has not shown that reasonable counsel would not have elected to forgo this objection. See *Calhoun v. State*, 308 Ga. 146, 151 (2) (b) (839 SE2d 612) (2020) ("[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic." (citation and punctuation omitted)).

(iii) *Failure to Object to Evidence of Kirkland's Same-Sex Relationship with Ogletree*

Evidence related to Kirkland's relationship with Ogletree was admitted at trial in two ways. Several witnesses who lived in the neighborhood testified that they had seen Ogletree and Kirkland together both in the neighborhood and at Ogletree's house. In addition, Ogletree's cellmate, Gregory Escobar, was allowed to testify about statements Ogletree made while they were incarcerated. Prior to trial, the court ruled that although evidence

27

of the relationship between Kirkland and Ogletree would be admissible at trial, the sexual nature of the relationship was not relevant and witnesses would not be allowed to speculate about it. This ruling was revisited at trial as Escobar began his testimony and said that Ogletree told him that Kirkland was his boyfriend. Following that statement, the court held a conference outside the presence of the jury where Kirkland's counsel confirmed that he had no objection to a witness referring to Kirkland as Ogletree's boyfriend, but he would object to any witness speculating about the sexual nature of the relationship. After the State noted that the witness was not speculating and reassured the court that it expected the witness to say only that Ogletree said he "was in a relationship with" Kirkland or "was his boyfriend," the court announced it would allow Escobar to continue testifying. The jury returned to the courtroom, and the following exchange occurred:

> PROSECUTOR: And how did Mr. Ogletree describe his relationship with Mr. Kirkland?
> ESCOBAR: They were — they were lovers.
> PROSECUTOR: And this is — he told you this?
> ESCOBAR: In so many words, yes.

PROSECUTOR: And what does that mean?
ESCOBAR: Well, he described the sexual acts. That's for one. . . . They had an intimate relationship to the point where he said —

At this point, the prosecutor interrupted Escobar's testimony and began a new line of questioning.

Kirkland complains that his trial counsel provided ineffective assistance by failing to object to evidence suggesting he was involved in a sexual relationship with Ogletree and claims that he was prejudiced by the admission of this evidence because it is likely the jury convicted him because he is a "homosexual who had a proclivity to follow his gay 'lover' Ogletree into crime."

Again, we conclude Kirkland has failed to establish ineffective assistance. Any objection to the admission of evidence of the general nature of Kirkland's relationship with Ogletree would have been meritless given that it tended to show Kirkland's relationship with his co-defendant and his personal interest in the neighborhood disputes. With regard to Escobar's comment about the sexual nature of the relationship, Kirkland's counsel testified that he did not object

to this comment by Escobar because he knew other evidence about the relationship would be admitted, and he felt comfortable that the jury he selected would not be affected by the admission of this evidence because he intentionally eliminated through voir dire jurors who may have held a bias against persons involved in a same-sex relationship. Under these circumstances, we cannot say that counsel's decision not to object to Escobar's brief and truncated reference to the sexual nature of Kirkland's relationship with Ogletree was so patently unreasonable that no competent lawyer would have made the same decision. See *State v. Abernathy*, 289 Ga. 603, 609 (4) (d) (715 SE2d 48) (2011) (counsel's failure to object to evidence regarding defendant's same-sex relationship with a witness, who was also a co-arrestee, was not deficient because the relationship was relevant; the State did not "belabor the issue beyond this limited purpose"; and counsel "had sought through voir dire to eliminate jurors who may have held biases against those practicing homosexuality"); *Hayes*, 298 Ga. at 105 (2) (c); *Johnson*, 294 Ga. at 92-93 (7) (b). Kirkland, therefore, has failed to

demonstrate constitutionally deficient performance, and this claim fails.

3. Evidence of Kirkland's February 2015 arrest for possession of heroin with the intent to distribute was admitted at trial pursuant to Rules 403 and 404 (b) to show Kirkland's motive and intent in the charged crimes, i.e., that residents of 716 Jett Street were interfering with Kirkland and Ogletree's drug sales. Kirkland argues that the trial court abused its discretion by admitting this evidence because it was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice to him. See OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). We disagree.

Evidence that reflects on a person's character or trait of character, which is inadmissible to show the person acted in conformity with such character or trait, may nevertheless be

31

admitted under Rule 404 (b) for other purposes, including to show

"proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident." OCGA § 24-4-404 (b).

Under the statutory framework of Rule 404 (b) and Rule 403,

> extrinsic act evidence may be admitted if a three-part test
> is met: (1) the evidence is relevant to an issue in the case
> other than the defendant's character, (2) the probative
> value is not substantially outweighed by the danger of
> unfair prejudice as required by Rule 403, and (3) there is
> sufficient proof for a jury to find by a preponderance of the
> evidence that the defendant committed the prior act.
> When an appellate court reviews the admission of Rule
> 404 (b) evidence and the proper application of the Rule
> 403 balancing test, the trial court's decision will not be
> disturbed unless there is a clear abuse of discretion.

*West v. State*, 305 Ga. 467, 473 (2) (826 SE2d 64) (2019) (citations

and punctuation omitted).

Kirkland does not challenge the trial court's determination

that there was sufficient proof for the jury to find that he was

arrested in February 2015 and charged with possession of heroin

with the intent to distribute. Accordingly, we need only address the

32

first and second prongs to determine whether evidence of his prior arrest was properly admitted at trial.

As stated, the trial court allowed this evidence, in part, for the purpose of showing Kirkland's motive, which we have defined as "the reason that nudges the will and prods the mind to indulge the criminal intent." *Brooks v. State*, 298 Ga. 722, 726 (783 SE2d 895) (2016) (citation and punctuation omitted). Kirkland argues this was error because the evidence lacked any relevance and was offered by the State solely to "suggest he had a proclivity to participate in Ogletree's criminal conduct." This evidence, however, was relevant to show Kirkland's motive for committing the arson as it shed light on the nature of the relationship between Kirkland and his neighbors, especially because Ogletree believed his neighbors set them up for this arrest, and showed that Kirkland was in competition with his neighbors for drug sales. Accordingly, the trial court did not abuse its discretion by deciding that evidence of Kirkland's prior arrest was relevant to the charged crimes to show

his motive.[5] See *Smart v. State*, 299 Ga. 414, 417-418 (2) (a) (788 SE2d 442) (2016) (evidence of prior acts of domestic violence committed by the defendant against the victim was relevant to show the defendant's motive in beating her).

We similarly identify no abuse of discretion in the trial court's findings related to the second prong, which requires a court to weigh the probative value of the other-act evidence against the danger of unfair prejudice under Rule 403.

> The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts, but as we have explained before, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly. The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*Smart*, 299 Ga. at 418 (2) (b) (citations and punctuation omitted).

---

[5] Because we conclude that evidence of Kirkland's prior arrest was properly admitted to show motive and Kirkland asserts no claim regarding the trial court's instruction that the jury could consider the evidence for intent, we need not consider whether it was admissible under Rule 404 (b) for the purpose of showing Kirkland's intent.

34

Here, evidence that Kirkland was arrested for possession of drugs with the intent to distribute showed not only that he may have engaged in drug sales but also the nature of his relationship with his neighbors and why he may have wanted to interfere with his neighbors' competing drug sales or retaliate against them after they "snitched" to police, resulting in his arrest. Although this evidence may have been prejudicial, as evidence of a defendant's prior arrest would tend to be, the jury also heard evidence that the charge against Kirkland was later dismissed and

> there was nothing inherent in this evidence that would create a risk that [Kirkland] would be convicted on a ground different from proof specific to the offense[s] charged. . . . [N]othing in the [testimony] would shock the average juror or otherwise render the jury incapable of weighing the evidence in a disinterested manner, and given the relevance of the evidence to the question of motive, we cannot say that any prejudice it might have caused outweighed its significant probative value.

*Smart*, 299 Ga. at 419 (2) (b) (citation and punctuation omitted). Thus, Rule 403 was satisfied because the probative value of this evidence was not substantially outweighed by the danger of unfair

35

prejudice. See *Anglin v. State*, 302 Ga. 333, 336-337 (3) (806 SE2d 573) (2017) (trial court did not abuse its discretion in performing the balancing required by Rule 403 and admitting evidence of the defendant's gang membership to explain the defendant's motive).

For all of these reasons, we discern no error in the trial court's decision to admit evidence of Kirkland's prior arrest. See *Smart*, 299 Ga. at 416-419 (2).

4. Kirkland contends the trial court committed plain error by admitting evidence of Ogletree's pre-trial statements to Escobar as statements of a co-conspirator under OCGA § 24-8-801 (d) (2) (E) ("Rule 801 (d) (2) (E)").[6] Counsel did not object to the admission of this evidence, and therefore, its admission is reviewed for plain error. See *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016); see also OCGA § 24-1-103 (d) ("Nothing in this Code section shall

---

[6] Specifically, Escobar was allowed to testify that Ogletree told him (1) that the case was "about a fire" and "about his boyfriend on the second fire," (2) that the kerosene was in his basement, and (3) that after the fire, Ogletree told Kirkland to change his clothes, in case anyone came looking for him. Escobar also testified that Ogletree nodded when he was asked whether he knew that Kirkland went to the neighbors' house to set the fire.

preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").

To show plain error, a defendant must point to an error that was "not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Lupoe*, 300 Ga. at 243 (4) (citation and punctuation omitted). We need not analyze all of the elements of the plain-error test when the defendant has failed to establish one of them. See *Stripling v. State*, 304 Ga. 131, 135 (2) (816 SE2d 663) (2018).

Rule 801 (d) (2) (E) provides, in pertinent part, that admissions by party-opponents shall not be excluded under the hearsay rule. An "admission," as applicable here, includes statements offered against a party that were made by a co-conspirator "of a party during the course and in furtherance of the conspiracy, including [statements] made during the concealment phase of a conspiracy. OCGA § 24-8-

801 (d) (2) (E)." *Kemp v. State*, 303 Ga. 385, 392 (2) (b) (810 SE2d 515) (2018) (punctuation omitted). "To admit evidence under Rule 801 (d) (2) (E), the State is required to show by a preponderance of the evidence that a conspiracy existed, the conspiracy included the declarant and the defendant against whom the statement is offered, and the statement was made during the course and in furtherance of the conspiracy." Id. The State need only make a prima facie case of conspiracy to admit a co-conspirator's statements. See *Davis v. State*, 302 Ga. 576, 583 (4) (805 SE2d 859) (2017).

Kirkland concedes that Escobar's testimony about Ogletree's inculpatory statements was admissible against Ogletree, but he argues that it was not admissible against him under Rule 801 (d) (2) (E) because the statements were not made in furtherance of the conspiracy. We identify no clear error in the admission of this evidence under Rule 801 (d) (2) (E) because the record shows the jury was properly instructed as to the limited use of this evidence. The record shows that the court instructed the jury that

[a]ny out-of-court statement by one of the defendants on

trial in this case, after the alleged criminal act has ended, may be considered only against the person who has made the statement, and only if you find that such statement was freely and voluntarily made.

Thus, contrary to Kirkland's claim, the jury was specifically instructed that Ogletree's out-of-court statements could only be considered against Ogletree, and there is no evidence that, as Kirkland asserts, the interval between Escobar's testimony and the court's final instructions impermissibly allowed the jury to use this evidence for any improper purpose or that the jury ignored the trial court's instruction in deciding Kirkland's guilt or innocence of the charged crimes. See *Bentley v. State*, 307 Ga. 1, 8 (2) (b) (2) (834 SE2d 549) (2019) (recognizing that we ordinarily presume that jurors follow the trial court's instructions).

In a related claim, Kirkland argues that admission of Escobar's statements violated his due process rights under the Georgia and United States Constitutions and that his constitutional right to be confronted with the witnesses against him should be expanded, or expanded beyond testimonial statements. See *Bruton v. United*

*States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968). In the absence of clear authority supporting his proposition that his right to confront witnesses should be expanded, however, Kirkland's claim fails because he has failed to show clear error that is beyond reasonable dispute. *Lupoe*, 300 Ga. at 243 (4); see *Leonard v. State*, 316 Ga. 827, 835 (3) (889 SE2d 837) (2023) (holding that the absence of clear authority to support the proposition advanced by the defendant on appeal prevented the finding of plain error); *State v. Herrera-Bustamante*, 304 Ga. 259, 266 (2) (b) (818 SE2d 552) (2018) (there was no clear error, and thus no plain error, where defendant argued that evidence was inadmissible on a ground that would have required extension of established precedent).

5. Kirkland also argues that the trial court was required under OCGA § 24-1-104 (a) and (c) to hold a hearing related to the admissibility of Ogletree's statements to Escobar and that the court erred by failing to do so. We disagree.

"OCGA § 24-1-104 (a) lays out the general standard for trial court rulings on preliminary questions concerning the qualification

of a person to be a witness, the existence of a privilege, or the admissibility of evidence[.]" *Hampton v. State*, 308 Ga. 797, 805 (3) (c) (843 SE2d 542) (2020) (punctuation omitted). It does not require the State to file a pre-trial motion for rulings on preliminary issues, id., and it does not require a court to sua sponte hold such a hearing.[7]

6. Kirkland also challenges a portion of the trial court's final instructions. Specifically, he asserts that the trial court committed plain error by instructing the jury that evidence of his February 2015 arrest for drug possession could be considered to prove his identity in the charged crimes under Rule 404 (b). Under the facts of this case, we disagree.

The record shows that immediately after the jury heard the evidence regarding Kirkland's prior arrest and Ogletree's prior arrest and conviction on drug charges, the court gave a limiting

---

[7] The record shows that a pre-trial hearing was held regarding the admissibility of evidence of the nature of Kirkland and Ogletree's relationship, and a similar discussion was held outside the presence of the jury before Escobar's testimony on that subject was admitted at trial. There is no indication, however, that Kirkland sought a preliminary ruling on the admissibility of any other aspect of Escobar's expected testimony, which, of course, he would have been authorized to do pursuant to OCGA § 24-1-104 (a).

41

instruction stating that other-act evidence could be used to attack Ogletree's credibility and nothing else. A short time later, the State advised the court that the limiting instruction it gave was incorrect and that the court should have instructed jurors that the evidence could be used to show intent and motive, as those were the purposes proposed by the State in its Rule 404 (b) motion. See OCGA § 24-4-404 (b) (providing, in pertinent part, that "[t]he prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial"). Both defense attorneys agreed, and with the agreement of all parties, the court instructed the jury to ignore its previous instruction and gave a new instruction stating that evidence of other acts could be considered to show the defendants' intent and motive. However, in its final instruction, the court told the jury that other-act evidence could be used for the purpose of showing identity and motive. Because Kirkland's counsel did not object to the court's final

42

instructions, this challenge is subject to plain-error review. *See Smith v. State*, 315 Ga. 357, 362-363 (3) (882 SE2d 289) (2022); OCGA § 17-8-58 (b).

This Court conducts a plain-error analysis of unrequested and unobjected-to jury instructions under OCGA § 17-8-58 (b) and will reverse "only if there was an instructional error that was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Smith*, 315 Ga. at 363 (3) (citation and punctuation omitted); see *Lupoe*, 300 Ga. at 243 (4). In this analysis, we consider the court's instructions as a whole, rather than looking at the challenged instruction in isolation. *Priester v. State*, 316 Ga. 133, 139 (3) (886 SE2d 805) (2023).

Here, the court clearly erred when it instructed the jury that it could use other-act evidence to prove identity in the charged crimes, a purpose for which it was not offered by the State or approved for admission by the court. At the time evidence of

43

Kirkland's prior arrest was admitted, however, the jury was instructed that its use of other-act evidence was limited to the permissible purposes of showing intent and motive. The record also shows that the jury was instructed numerous times during trial that other-act evidence could not be used to show a defendant's character or propensity to commit the charged crimes. Viewing the court's instructions as a whole then, as we must, and considering the strength of the evidence of Kirkland's guilt, as previously summarized, we conclude that although the court's general instruction regarding the use of other-act evidence, which neither mentioned Kirkland nor referenced any specific other-act evidence, was clearly erroneous, it likely did not affect the outcome of the proceedings in his case. See *Priester*, 316 Ga. at 139 (3) (court's erroneous instruction that jury could use other-act evidence for an improper purpose was harmless error where the instructions, as a whole, reduced the likelihood that the error contributed to the verdict and the jury was told it could not use that evidence as proof of the defendant's propensity to commit

crimes). See *Gates v. State*, 298 Ga. 324, 328 (3) (781 SE2d 772) (2016) (admission of possibly improper evidence likely did not affect outcome of trial where evidence of guilt was overwhelming). Therefore, the third prong of the plain-error test has not been met, and Kirkland's challenge to the court's final instruction fails. See *Burley v. State*, 316 Ga. 796, 803 (888 SE2d 507) (2023) ("If one prong of the plain error test is not satisfied, we need not address the other prongs of the test.").

7. Finally, Kirkland asserts that he is entitled to a new trial because of the cumulative prejudicial effect of the trial court's errors. See *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020) (holding that "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors"). To establish cumulative error, however, an appellant must show that "at least two errors were committed in the course of the trial." *Jackson v. State*, 317 Ga. 95, 107 (4) (891 SE2d 866) (2023). Here, there is no basis for evaluating the cumulative effect of errors because we have identified only one error

and rejected Kirkland's other claims. See *Flood v. State*, 311 Ga. 800, 808-809 (2) (d) (860 SE2d 731) (2021) (finding no basis for evaluating cumulative effect where only one error with respect to a jury charge was shown).

*S23A0943. Ogletree v. The State*

8. Ogletree contends that the lack of physical evidence linking him to the crimes and questionable credibility of several State witnesses demands the conclusion that the evidence was insufficient to sustain his convictions for murder.[8]

---

[8] Ogletree also argues that the evidence was insufficient as to the felony murder and arson charges. These arguments are moot given our conclusion that the evidence was sufficient to sustain Ogletree's malice murder convictions and the fact that the trial court merged Ogletree's conviction on the arson count into the murder count and his convictions on the felony murder counts were vacated by operation of law. See *White v. State*, 287 Ga. 713, 714-715 (1) (a) (699 SE2d 291) (2010). With regard to the propriety of the trial court's conclusion that the arson count merged into the murder count, the State failed to raise a merger error issue by cross-appeal, and the record shows that it did not raise an issue at the sentencing hearing. When the State fails to raise a merger error that benefits a defendant by cross-appeal, we will exercise our discretion to correct the error only in exceptional circumstances. See *Dixon v. State*, 302 Ga. 691, 696-698 (4) (808 SE2d 696) (2017) ("[W]hen a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances."). There are no exceptional circumstances here, and we will not exercise our discretion to correct any error in sentencing. Id.

The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), is the proper standard for evaluating the sufficiency of the evidence as a matter of constitutional due process. Under that test, we view all of the evidence presented at trial in the light most favorable to the verdicts and consider whether any rational juror could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See id. at 319 (III) (B); *Fitts v. State*, 312 Ga. 134, 141 (3) (859 SE2d 79) (2021). "This 'limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts.'" *Muse v. State*, 316 Ga. 639, 647 (2) (889 SE2d 885) (2023) (citation omitted).

In addition, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). A person is concerned in the commission of a crime if he, among other things,

47

"[d]irectly commits the crime" or "[i]ntentionally aids or abets" in its commission. OCGA § 16-2-20 (b) (1), (3). "'Conviction as a party to a crime requires proof of a common criminal intent, which the jury may infer from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes.'" *Muse*, 316 Ga. at 648 (2) (citation omitted).

Here, there was evidence from which the jury would be authorized to conclude that Ogletree had an ongoing dispute with his neighbors, whom he believed were interfering with his drug sales and had notified the police of his criminal activities, and that he shared with Kirkland a criminal intent to start the fire. There was also evidence that after the fire, Ogletree told Kirkland to change his clothing and attempted to intimidate a witness in an effort to conceal their crimes. See *Muse*, 316 Ga. at 648 (2); *State v. Cash*, 302 Ga. 587, 595 (807 SE2d 405) (2017) ("[I]f a defendant has knowledge of the crime which is intended and shares in the criminal intent of the principal actor, that defendant is an aider and abettor."). This evidence, when viewed in the light most

48

favorable to the verdicts, was sufficient as a matter of due process to authorize the jury to find Ogletree guilty beyond a reasonable doubt as either a direct participant in or party to the crime of the malice murder of the victims. See *Jackson*, 443 U. S. at 319 (III) (B). See also, e.g., *Muse*, 316 Ga. at 647-648 (2) (the State is not required to prove that the defendant personally fired at the victim to prove a defendant's guilt as a party to a crime); *Palmer v. State*, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018) (evidence that the defendant attempted to influence or intimidate a witness can serve as circumstantial evidence of guilt); *Cash*, 302 Ga. at 595-596 (evidence that the defendant assented to and lent approval to the commission of the crime by a co-defendant and lied to police after the crime about the weapon used was sufficient to support the jury's finding that the defendant aided and abetted the crime). See also OCGA § 16-2-20 (a), (b) (1), (3). Contrary to Ogletree's assertion, it was for the jury to determine the credibility of the State's witnesses. See *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009).

9. Ogletree also raises two claims related to the trial court's admission of evidence that he contends improperly put his character in issue in violation of Rule 404 (b). He contends that the trial court abused its discretion by admitting this evidence at trial, specifically arguing that it was not relevant, violated Rule 404 (b)'s prohibition on bad character evidence, and was highly prejudicial and should have been excluded under Rule 403. We conclude that none of these claims requires reversal.

(a) *Prior Arrest and Conviction Evidence*

Similar to Kirkland's argument challenging the admission of evidence of his prior arrest, see Division 3, supra, Ogletree contends the trial court erred in ruling that evidence of his 2015 arrest and conviction for possession of drugs with the intent to distribute was admissible under Rules 403 and 404 (b) to show motive.[9] Ogletree does not challenge the sufficiency of the proof that he committed

---

[9] Evidence of Ogletree's 2015 conviction was admitted at trial without objection. Evidence of the investigation leading to Ogletree's 2015 arrest was admitted at trial over objection through the testimony of the officer involved in the investigation of that crime under Rule 404 (b) for the purpose of showing Ogletree's motive and intent.

the prior crime, and for the same reasons explained in Division 3 of Kirkland's appeal, supra, we identify no abuse of discretion in the trial court's decision to admit evidence of Ogletree's prior arrest and conviction to prove his motive in the charged crimes. Even assuming the evidence incidentally placed Ogletree's character at issue, it was relevant to show his motive for the charged crimes and its probative value was not substantially outweighed by the danger of unfair prejudice, especially given that there was other evidence presented showing that Ogletree sold drugs from his home. See *Anglin*, 302 Ga. at 336-337 (3). Accordingly, the trial court did not abuse its discretion by admitting evidence of Ogletree's prior conviction. See *Davis*, 301 Ga. at 400 (2).

(b) *Prior Fire Evidence*

Evidence of the previous fire at 716 Jett Street was admitted primarily through the testimony of Captain Jeff Cutral of the Atlanta Fire Rescue, who testified that he investigated the 2014 fire but was unable to determine its cause. Other evidence showed that the 2014 fire, like the 2015 fire, occurred within a day of an

51

altercation between Ogletree and a resident of 716 Jett Street. The trial court admitted evidence of the prior fire for the purpose of supporting the State's theory that Ogletree was trying to eliminate competing drug dealers and had asked others to burn his neighbors' house as well as the purpose of showing the circumstances surrounding the charged crimes. The State argues that evidence of the prior fire was admissible without the notice required by Rule 404 (b) because it was intrinsic to the charged crimes. See *Williams v. State*, 302 Ga. 474, 485-486 (IV) (d) (807 SE2d 350) (2017) (stating that "[t]he limitations and prohibition on 'other acts' evidence set out in OCGA § 24-4-404 (b) do not apply to intrinsic evidence" (punctuation and footnote omitted)). Neither defense counsel objected to the admission of this evidence at trial, and therefore, its admission is subject to plain-error review. *Lupoe*, 300 Ga. at 243 (4); see also OCGA § 24-1-103 (d).

As stated, to show plain error, a defendant must point to an error that was "not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have

affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." *Lupoe*, 300 Ga. at 243 (4) (citation and punctuation omitted).

We need not decide here whether it was clear error to admit evidence of the earlier fire or whether such error was affirmatively waived, however, because we conclude admission of this evidence did not "affect[ ] [Ogletree's] substantial rights." See *Lupoe*, 300 Ga. at 243 (4) (citation and punctuation omitted). The evidence of Ogletree's guilt, which included his admissions to Escobar, was strong, and evidence of the prior fire was cumulative of both evidence that Ogletree had previously tried to hire others to set fire to 716 Jett Street and the numerous disputes between Ogletree and his neighbors. See *Virger v. State*, 305 Ga. 281, 293-294 (7) (a) (824 SE2d 346) (2019) (holding that the trial court's erroneous admission of extrinsic-act evidence was harmless error because it was cumulative of other, properly admitted evidence). Moreover, the court instructed the jury that it could not conclude from the

53

other-act evidence admitted at trial either Ogletree's bad character or his propensity to commit the crimes, and jurors were reminded that Ogletree was only "on trial for the offenses charged" in the indictment and "not for any other acts, even though such acts may incidentally be criminal." Because we presume the jury followed the court's instruction not to use the other-act evidence to make improper inferences about Ogletree's propensity to commit the crimes for which he was on trial, see *Bentley*, 307 Ga. at 8 (2) (b) (2), any potential prejudice from the admission of evidence of the prior fire was minimized by the court's instructions as a whole. See *Howell v. State*, 307 Ga. 865, 875-876 (3) (838 SE2d 839) (2020) (admission of Rule 404 (b) evidence was harmless where the evidence of defendant's guilt was strong and the trial court instructed the jury that it could consider the other-act evidence only for the limited Rule 404 (b) purpose, that the defendant was on trial only for the offenses charged in the indictment, and that the other-act evidence, by itself, could not be a basis for conviction). Under these circumstances, Ogletree has not met his burden of showing

that the assumed error affected his substantial rights, and he has failed to demonstrate plain error on this ground.

(c) *Evidence That Ogletree Sold Drugs*

Ogletree similarly asserts that the trial court erred by allowing several witnesses to testify that he sold drugs. He argues that this evidence was highly prejudicial because the evidence against him was weak, and the court failed to instruct the jury on how it could use this other-act evidence. Like the evidence of Ogletree's prior arrest and the prior fire, the admission of this evidence is subject to plain-error review because it was admitted without objection. See *Lupoe*, 300 Ga. at 243 (4); OCGA § 24-1-103 (d).

Again, even assuming Ogletree could show that admission of the witness testimony he now challenges was error and that the error was not affirmatively waived, he has not shown prejudice. There was other admissible evidence demonstrating that he sold drugs, including evidence of his prior arrest and conviction for possession of drugs with the intent to distribute. Moreover, as

55

discussed above, the evidence of Ogletree's guilt, which included his own admissions and evidence that he had tried, on several prior occasions, to hire others to set fire to his neighbors' house, was strong. See *Virger*, 305 Ga. at 293-294 (7) (a). Accordingly, Ogletree has failed to establish the third prong of the plain-error test, that the error affected his substantial rights, and his claim of plain error on this ground fails. See *Burley*, 316 Ga. at 803.

10. Ogletree also asserts that the trial court committed plain error by instructing the jury that it could use evidence of his prior arrest and conviction for possession of heroin with the intent to distribute to show identity in the charged crimes. This is the same argument raised by Kirkland and discussed in Division 6, supra, and because Ogletree's counsel did not object to the court's instruction, this alleged error is also reviewed under the plain-error standard. See *State v. Williams*, 308 Ga. 228, 231 (1) (838 SE2d 764) (2020).

As in Kirkland's appeal, the State here has conceded that the court's final instruction regarding the jury's use of other-act

56

evidence was erroneous. We conclude, however, as we did in Kirkland's appeal, that any prejudice from the court's erroneous instruction was minimized because we consider the instructions as a whole, and we presume the jury followed the court's instruction not to use the other-act evidence to make improper inferences about Ogletree's propensity to commit the crimes for which he was on trial. See *Priester*, 316 Ga. at 140 (3). Moreover, as in Kirkland's appeal, we conclude that despite the erroneous instruction, it is not likely that the jury used the evidence of Ogletree's prior conviction to establish identity, given the strength of the State's evidence against him. As detailed above, the evidence, including Ogletree's own admissions, showed that Ogletree had attempted to hire others to set fire to his neighbors' home, and when those efforts failed, he conspired with Kirkland to set the fire. After the fire, he then attempted to conceal the crimes. In these circumstances, we cannot say that the court's erroneous instruction likely affected the outcome of Ogletree's trial. See id. at 139 (3); *Jones v. State*, 302 Ga. 892, 897-898 (3) (810 SE2d 140)

(2018) (court's error in instructing the jury was harmless, given the court's instruction as a whole and the very strong evidence of defendant's guilt). Accordingly, Ogletree has failed to satisfy the third prong of plain-error review, that the challenged instruction likely affected the outcome of the proceedings. See *Burley*, 316 Ga. at 803.

11. Although Ogletree does not argue that we should apply a cumulative error review, we have assumed one trial court error of an evidentiary nature and determined that the trial court erred in its instruction to the jury regarding its use of other-act evidence and concluded that both were harmless. Nevertheless, even assuming that we must sua sponte apply a cumulative error review under *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020), we conclude that Ogletree has failed to establish that the combined prejudicial effect of the court's erroneous jury instruction and assumed trial court error in the admission of evidence of his drug sales denied him a fundamentally fair trial. See, e.g., *Huff v. State*, 315 Ga. 558, 568 (6) (883 SE2d 773) (2023)

(rejecting cumulative error claim "because Appellant ha[d] not demonstrated that the prejudicial effect of the assumed trial court errors and ineffective assistance denied him a fundamentally fair trial, given the strong evidence against him").

*Judgments affirmed. All the Justices concur.*

Decided February 20, 2024 — Reconsideration denied March 19, 2024.

Murder. Fulton Superior Court. Before Judge Krause.

*Jacob D. Rhein*, for appellant (case no. S23A0942).

*Brian V. Patterson*, for appellant (case no. S23A0943).

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Alex M. Bernick, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.